■ In the Matter of the Claim of Kenneth J. Deck, Respondent, v Darin M. Dorr, Doing Business as The Deer Shop, et al., Appellants. Workers' Compensation Board, Respondent. [54 NYS3d 765]—

Clark, J. Appeal from an amended decision of the Workers' Compensation Board, filed November 10, 2015, which ruled that claimant had a 100% schedule loss of use of his right thumb in addition to his previously awarded 100% schedule loss of use of his right hand.

In 2011, claimant sustained an established injury to his right hand when it was caught in a meat grinder at work, amputating all four of his fingers and his thumb on his right hand. Surgeons reattached claimant's thumb, but it is about half the size of his left thumb and has no pinching ability. Upon consent of the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), a Workers' Compensation Law Judge (hereinafter WCLJ) awarded claimant a 100% schedule loss of use (hereinafter SLU) of his right hand based upon the loss of his four fingers, without consideration of his thumb, in accordance with workers' compensation guidelines (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 18, table 2.4 [2012] [hereinafter the guidelines]). The carrier disputed claimant's entitlement to an additional award for the loss of use of his right thumb, and the WCLJ reserved on this issue.

At the ensuing hearing, Paul Douglas Paterson, claimant's surgeon, testified that, upon utilization of the applicable guidelines and taking into account loading,[1] the amputations of all four of claimant's fingers and his thumb equated to a combined SLU of 157%. Paterson calculated that claimant was therefore entitled to 382 weeks of compensation (see Workers' Compensation Law § 15 [3] [c]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 14, No. 2 [2012]), which translated into an SLU of 157%.[2] When questioned about an SLU exceeding 100% for all of the digits on one hand, Paterson explained that the

1. "Loading" refers to the "amount added to a schedule to allow for weakness of grasp or major loss of function when multiple digits are affected" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 16).

2. The 382 weeks was derived by adding 75 weeks for the thumb, 46 weeks for the first finger, 30 weeks for the second finger, 25 weeks for the third finger and 15 weeks for the fourth finger—for a total of 191 weeks (see Workers' Compensation Law § 15 [3] [f], [g], [i], [j], [l]). Because of 100% loading (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 16-17 [2012]), another 100% of that 191 weeks was added on top of the 191 weeks, thereby resulting in 382 weeks.

guidelines contemplate circumstances in which the SLU may exceed 100% for the loss of parts of a hand (*see* New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 17, figure 2.8 [2012]). The WCLJ issued a decision crediting Paterson's unrefuted testimony and reliance on the guidelines, and concluded that claimant had sustained an additional 57% SLU of his right thumb, or a combined 157% SLU of his right hand.

Upon the carrier's appeal, the Workers' Compensation Board initially modified by rescinding the 157% SLU, finding that, under the guidelines and given the limited functioning of his thumb, claimant had sustained a 100% SLU of his right thumb, in addition to the previously awarded 100% SLU of his right hand, as the latter award had been based on the amputation of his four fingers. The carrier applied for reconsideration and/or full Board review. The Board denied the request for full Board review, but issued an amended decision clarifying that Workers' Compensation Law § 15 (3) (q) precluded the WCLJ's 157% SLU award for claimant's right hand, and rescinded the additional 57% SLU awarded for the thumb. However, the Board determined that claimant sustained distinct injuries to his four fingers and to his thumb, which had differing impacts to the functionality of his hand, thereby permitting separate SLU measurements and awards for the loss of his fingers and the loss of his thumb. The Board further concluded that claimant's loss of his four fingers, excluding his thumb, warranted the previously awarded 100% SLU of his right hand and that, separately considering his thumb injury, claimant was also entitled to a 100% SLU of his right thumb. The carrier now appeals.

We affirm. The disputed issue is whether the Board erred in awarding claimant an additional 100% SLU for the amputation of his nonfunctioning, reattached right thumb which, combined with the previous 100% SLU of his right hand for the amputation of his four right fingers, exceeds 100% for injuries to his right hand. In relevant part, Workers' Compensation Law § 15 (3) (q), on which the carrier relies, provides that "[c]ompensation for [the] loss or loss of use of two or more digits . . . of a hand . . . may be proportioned to the loss of use of the hand . . . occasioned thereby[,] but shall not exceed the compensation for loss of a hand." The carrier argues that the 100% SLU award for claimant's right hand based upon the loss of his four fingers necessarily encompasses compensation for all components of his hand, including his thumb, and that the total SLU for all injuries to the right hand cannot exceed

100%. The Board agreed that Workers' Compensation Law § 15 (3) (q) precludes a combined 157% SLU of the right hand for this accident, but concluded that it could, based upon competent, unrefuted medical evidence, separately evaluate multiple injuries to claimant's hand. Indeed, courts have held that, where a claimant suffers multiple injuries to a hand or other body part, the Board is not limited to a 100% SLU award for separate injuries to the hand or other body part (*see Matter of Bazzano v Ryan & Sons*, 62 AD2d 260, 261 [1978]; *Matter of Fullerton v Frewsburg Furniture Co.*, 263 App Div 1029, 1029-1030 [1942]; *see also Matter of Zimmerman v Akron Falls Park—Erie County*, 29 NY2d 815, 817 [1971], *revg* 35 AD2d 1030 [1970]; *Matter of Pellegrino v Textile Prints Corp.*, 81 AD2d 723, 724 [1981]; *cf. Matter of Flicker v Mac Sign Co.*, 252 NY 492, 494-495 [1930]; *Matter of Brown v Wilson Moving & Stor. Co.*, 58 AD2d 128, 129-130 [1977]).

Here, the Board proportioned the loss of four fingers to the total loss of the hand as required by Workers' Compensation Law § 15 (3) (q), and then separately evaluated the distinct and additional injury to the thumb, to which it awarded a 100% SLU. We defer to the Board's determination to credit the sole proffered medical opinion of Paterson, and the Board's conclusion based thereon that claimant sustained a separate and distinct injury to his thumb, which therefore warranted separate SLU determinations and awards for the thumb and the fingers (*see Matter of Mellies v Consolidated Edison Co. of N.Y., Inc.*, 140 AD3d 1543, 1544 [2016]). Such result is supported by the guidelines, which contemplate awards greater than 100% for the loss of a hand (*see* New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 17, figure 2.8 [2012]) and provide that the loss of four fingers, excluding the thumb, constitutes a 100% SLU of the hand (*see* New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 18, table 2.4 [2012]). The guidelines, which address impairments to the thumb separately from fingers (*see* New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 12-14 [2012]), provide that "[t]he thumb deserves special consideration; it is the highest valued digit and the most important" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 17 [2012]). Under these circumstances, the Board's determination to assign a separate SLU to the loss of the thumb and to make a distinct award is supported by the case law and the guidelines, and is not contrary to the statutory language. Therefore, we uphold the Board's determination and affirm the amended decision.

Garry, J.P., Lynch and Rose, JJ., concur.

Aarons, J. (dissenting). Because I agree with the contention by claimant's employer and its workers' compensation carrier that claimant is not entitled to an additional 100% schedule loss of use (hereinafter SLU) award for his right thumb on top of the 100% SLU award already awarded to claimant for the loss of all four fingers on his right hand, I respectfully dissent.

In determining that claimant could receive a 100% SLU for his right hand based upon the amputation of his four fingers, plus another 100% SLU for his right thumb, the Workers' Compensation Board, in its amended decision, found that claimant's "injuries are distinct, and are independently negatively impacting the use of his hand" and, therefore, the "thumb injury will be considered separately from his fingers." To that end, "the [B]oard is not limited to a total schedule loss of 100%, but where supported by substantial medical evidence may assess each injury individually" (*Matter of Pellegrino v Textile Prints Corp.*, 81 AD2d 723, 724 [1981]; *cf. Matter of Bazzano v Ryan & Sons*, 62 AD2d 260, 261 [1978]). In my view, substantial medical evidence was lacking.

While Paul Douglas Paterson, claimant's surgeon, was the only medical professional to testify, when asked whether claimant had the functional use of his hand, Paterson responded that claimant's right hand was "an assist hand" because all he could use it for was to pin something down. Paterson also testified that claimant "doesn't have a hand." Although the thumb is given special consideration (*see* New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 17 [2012]), absent from Paterson's testimony was any explanation as to how the injury to claimant's right thumb was a separate and distinct injury from the injury to the other four fingers. Such omission is critical especially where all of claimant's fingers were amputated as a consequence of a single incident—i.e., claimant's hand getting caught in a meat grinder. I further note that an award of 100% SLU for only the right hand is in accord with the New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity, inasmuch as the guidelines provide that "[l]oss of all fingers at proximal phalanges equals 100% loss of use of the hand" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 17 [2012]).

Because the Board's determination was not supported by substantial evidence, I would reverse that part of the amended decision as awarded an additional 100% SLU for claimant's right thumb.

Ordered that the amended decision is affirmed, without costs.